MICHAEL HOFFMAN (State Bar No. 154481)
LAW OFFICE OF MICHAEL HOFFMAN
22 Battery Street, Suite 1000
San Francisco, CA 94111
Telephone: (415) 362-1111
Facsimile: (415) 362-1112
E-mail: mhoffman@employment-lawyers.com

Attorneys for Plaintiff
JUDE DELGADO

SONIA MARTIN (State Bar No. 191148)
KIMBERLY DE HOPE (State Bar No. 215217)
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300
E-mail: smartin@sonnenschein.com
kdehope@sonnenschein.com

Attorneys for Defendant
WILLIAMS LEA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JUDE DELGADO,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAMS LEA, INC., CHARLOTTE DOLLY, and DOES 1 through 100, inclusive<br><br>Defendants. | No. C07-3526 JSW<br><br>JOINT CASE MANAGEMENT CONFERENCE STATEMENT<br><br>Date: October 19, 2007<br>Time: 1:30 p.m.<br>Place: Crtm. 2, 17th Floor<br><br>Before: Hon. Jeffrey S. White |

Pursuant to Federal Rule of Civil Procedure 26(f) and Civil L.R. 16-9(a), the parties submit this Joint Case Management Statement with respect to the Case Management Conference set for October 19, 2007, and request that the Court adopt it as the Case Management Order.

**1. <u>Jurisdiction and Service:</u>**

On May 20, 2007, plaintiff commenced this action in San Francisco Superior Court. Williams Lea removed the action to federal court, asserting that diversity jurisdiction exists over this dispute because Ms. Dolly was fraudulently joined for removal purposes. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-1320 (9th Cir. 1998). Mr. Delgado subsequently moved to remand, arguing that Ms. Dolly was not fraudulently joined. The Court took the motion to remand under submission on August 16, 2007, and has not yet issued a ruling.

All parties have been served.

**2. <u>Facts:</u>**

As of March 27, 2007, plaintiff was employed by Williams Lea as a Document Specialist. Williams Lea subsequently terminated Mr. Delgado's employment for "falsifying time cards." Based on that termination, plaintiff alleges claims for relief against Williams Lea for violation of the California Family Right Act (Failure to Guarantee Employment), Disability Discrimination (Failure to Engage) and Failure to Compensate for Hours Worked. In addition, he alleges a libel claim against Charlotte Dolly.

One or more party contends the following factual issues are in dispute:

1. The reason Williams Lea terminated plaintiff; and
2. Whether plaintiff falsified his timecard or approved of Sandra Chew's falsification of his timecard.

**3. <u>Legal Issues:</u>**

One or more party contends the following legal issues are in dispute:

1. Whether plaintiff can state a valid claim against Charlotte Dolly;
2. Whether Williams Lea discriminated against plaintiff on the basis of any disability;
3. Whether Williams Lea violated the California Civil Rights Act; and
4. Whether Williams Lea failed to compensate plaintiff for hours worked.

**4. Motions:**

On July 22, 2007, Delgado moved to remand this action, asserting that Ms. Dolly was not fraudulently joined, and that this Court lacks diversity jurisdiction. This Court took the motion to remand under submission on August 16, 2007, but has not yet issued a ruling.

Following discovery, Williams Lea intends to move for summary judgment.

**5. Amendment of Pleadings:**

If the remand motion is denied, as plaintiff contends that Williams Lea and Heller Ehrman maintained a joint employer relationship with respect to Mr. Delgado, Plaintiff will attempt to amend to destroy diversity and this Court's jurisdiction. Alternatively, Plaintiff will request that this instant action be dismissed, as the following allegations will be pled to attempt to allege a joint employer situation:

1. "Williams Lea" employees provided direct support services to attorneys and other staff at Heller Ehrman
2. "Williams Lea" employees worked directly on the Heller Ehrman premises
3. If an attorney at Heller Ehrman was not pleased with the work performed by a "Williams Lea" employee, the "Williams Lea" employee would be terminated as a direct result. This situation occurred on a consistent basis from January 2006 through Mr. Delgado's termination in April 2007.
4. Heller Ehrman employees participated and assisted in the termination of "Williams Lea" employees. Specifically, in Mr. Delgado's case, Heller Ehrman employee Laura Knight participated in his termination, as well as supervised as Mr. Delgado packed up his belongings, and escorted him out of the building.
5. Heller Ehrman and "Williams Lea" employees held meetings once a week regarding staffing operations and enjoyed a close relationship in overseeing "Williams Lea" employees.

**6. Evidence Preservation:**

The parties have taken appropriate steps to ensure the preservation of evidence.

**7. Disclosures:**

The parties will serve their initial disclosure statements on or before October 19, 2007.

**8. Discovery:**

See, No. 5, herein. The parties plan to take discovery regarding all allegations in the complaint. The parties anticipate propounding written discovery and deposing the parties and other relevant witnesses.

The parties do not believe any modification to the Federal Rules is necessary at this time.

**9. Related Cases:**

There are no currently pending related cases.

**10. Relief:**

Plaintiff's Statement

Mr. Delgado contends that he has four (4) causes of action against Williams Lea, Inc. and Heller Ehrman, LLP, arising under the California Family Rights Act for Williams Lea, Inc.'s failure to guarantee Mr. Delgado's employment, disability discrimination under the Fair Employment and Housing Act (FEHA), libel under the California Civil Code and failure to compensate for hours worked under the California Labor Code. The combination of the wrongful actions on behalf of Williams Lea, Inc. entitles Mr. Delgado to both economic and non-economic damages, including wage loss in the form of both front pay and back pay, medical expenses, out-of-pocket expenses, and actual damages for emotional distress, humiliation, and mental anguish. Each category of damages will be addressed in turn.

**DAMAGE CALCULATIONS**

**Wage Loss**

Mr. Delgado contends he was wrongfully terminated on April 4, 2007, after spending the majority of his career working for Heller Ehrman LLP, which had since outsourced Mr. Delgado's position to Williams Lea, Inc. on January 23, 2006. Due to sixteen (16) years of dedicated service to Heller Ehrman LLP / Williams Lea, Mr. Delgado fully expected that he would stay with Heller Ehrman LLP / Williams Lea through his natural retirement age of sixty-

five. Mr. Delgado's expectation is reasonable on the basis of (1) his number of years of employment with Heller Ehrman LLP / Williams Lea and (2) the fact that he was not disciplined whatsoever with the exceptions of the illegal discipline notice he received in September 2006 related to his disability and the actual wrongful termination. Accordingly, Mr. Delgado's damages in terms of wage loss appropriately include his projected earnings over the next ten years, until retirement at age 65.

Projected future gross earnings were calculated assuming a four (4) percent upward cost of living adjustment, and do not include any expected merit, or promotional increases in pay. The earnings were based upon Mr. Delgado's W-2 wage statements for the years 2000-2006, and including Mr. Delgado's 2007 earnings statements to date. Additionally, starting with future wages expected in 2009, all wages have been adjusted for inflation and discounted to present value using a one and one-half (1 ½) percent discount rate.

| YEAR | FUTURE GROSS INCOME EARNINGS |
|---|---|
| 2007 | $54,590.70 |
| 2008 | $81,894.13 |
| 2009 | $85,169.90 |
| 2010 | $88,576.70 |
| 2011 | $92,119.77 |
| 2012 | $95,804.56 |
| 2013 | $99,636.74 |
| 2014 | $103,622.21 |
| 2015 | $107,767.06 |
| 2016 | $112,077.74 |
| 2017 | $116,560.85 |
| **Total** | $959,076.00 |
| **Total Discounted to Present Value** | $949,389.33 |

**Mitigation of Damages**

Upon his wrongful termination, Mr. Delgado applied for and received unemployment compensation in the aggregate amount of twelve thousand six hundred (12,600) dollars from April through August 2007. Accordingly, Mr. Delgado's damages of future gross income earnings for 2007 have been mitigated by that amount, in addition to the wages he received in 2007 from Williams Lea / Heller Ehrman, in the amount of eleven thousand five hundred fifty-three dollars and sixty-six cents ($11,553.66) and the above table reflects this mitigation. Additionally, Mr. Delgado has recently accepted employment with World Leadership Group as a marketing representative, and is currently studying to obtain his insurance license. Mr. Delgado applied to several law firms seeking employment commiserate with his experience at Williams Lea / Heller Ehrman, but, due to his termination, was unable to find such employment. Mr. Delgado has not received wages as yet, but will provide a further mitigation amount for his 2007 wages if and when that becomes available.

**Benefit Loss**

Although set forth in a separate category, Mr. Delgado is entitled to, and is therefore seeking the loss of fringe benefits, including economic damages with respect to his retirement and health insurance benefits, which comprised a large percentage of Mr. Delgado's total compensation. *See* Wise v. Southern Pacific Co. (1970) 1 Cal.3d 600, 607 (plaintiffs alleging wrongful termination are entitled to future wages, and "'wages' should be deemed to include not only the period of monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation.").

**Retirement Benefits**

Mr. Delgado has and planned on contributing the maximum contribution allowed into the Williams Lea 401(k) retirement plan, managed by VanGuard. In addition, Mr. Delgado was permitted to contributed the $5,000 Catch Up Contribution for employees age fifty (50) and over. The Williams Lea 401(k) plan provided interest of eight (8) percent on an employee's contribution. In addition, the Williams Lea 401(k) plan provided for matching employer contributions. Accordingly, the table below sets forth the damages Mr. Delgado incurred as a result of his wrongful termination with respect to the lost *future* earnings of his 401(k) retirement plan.

| Year | Maximum Contribution | 8% Interest | Employer Matching Contribution | Total Contribution | Cumulative Total Contribution Including Interest |
|---|---|---|---|---|---|
| 2008 | $21,000 | $1,680 | $21,000 | $43,680 | $43,680 |
| 2009 | $21,500 | $1,720 | $21,500 | $44,720 | $88,400 |
| 2010 | $22,000 | $1,760 | $22,000 | $45,760 | $134,160 |
| 2011 | $22,500 | $1,800 | $22,500 | $46,800 | $186,900 |
| 2012 | $23,000 | $1,840 | $23,000 | $47,840 | $228,800 |
| 2013 | $23,500 | $1,880 | $23,500 | $48,880 | $277,680 |
| 2014 | $24,000 | $1,920 | $24,000 | $49,920 | $327,600 |
| 2015 | $24,500 | $1,960 | $24,500 | $50,960 | $378,560 |
| 2016 | $25,000 | $2,000 | $25,000 | $52,000 | $430,560 |
| 2017 | $25,500 | $2,040 | $25,500 | $53,040 | $483,600 |
| **Total 401(k) Contributions and Earnings: $483,600** | | | | | |

In addition, Mr. Delgado, as a direct and proximate result of the wrongful termination by Williams Lea / Heller Ehrman, was forced to "cash out" or withdraw all monies from his current 401(k) in order to be able to pay basic living expenses, such as his mortgage payment, utilities, groceries, and other necessary expenses of daily living. As a result, Mr. Delgado has also incurred massive tax liability as a result of seemingly receiving a large lump sum payment from

his retirement plan. Mr. Delgado's damages with respect to this forced 401(k) cash out are as follows:

| Monetary Damages | Heller Ehrman, LLP | Williams Lea |
|---|---|---|
| Forced 401(k) Cash Out | $99,496.91 | $3,908.99 |
| Federal Taxes Paid as a Result of 401(k) Cash Out | $19,899.38 | $781.80 |
| State Taxes Due as a Result of 401(k) Cash Out | $9,949.69 | $390.90 |
| **Total: $134,427.67** | | |

**Health Benefits**

Mr. Delgado's health insurance was discontinued upon his wrongful termination from Williams Lea / Heller Ehrman. As a result, Mr. Delgado has incurred and will continue to incur significant out-of-pocket medical expenses described in more detail below.

**Medical Expenses**

Mr. Delgado lost his employer-provided health insurance as a result of his wrongful termination. Previously, Mr. Delgado received, through the Williams Lea / Heller Ehrman health benefits, medical care from Cigna PPO, vision care from Spectera, and dental care through United Dental Health. As a result, Mr. Delgado was forced to purchase private medical insurance coverage in order to receive medical care including but not limited to medical care related to his disability. Mr. Delgado has purchased, and will continue purchasing private medical insurance through Kaiser Permanente at a rate of four hundred and nine (409) dollars per month. This rate will continue from the present until Mr. Delgado reaches age sixty (60) in July 2011. At that time, Mr. Delgado's rate will increase to four hundred and fifty-four (454) dollars per month until Mr. Delgado reaches age sixty-five (65). As a result, Mr. Delgado will incur the following expenses in purchasing private medical insurance coverage.

| Date Range | Anticipated Costs |
|---|---|
| May 2007 – July 2011 Kaiser Permanente Health Coverage at a rate of $409 / month (through age 59) | $20,858.00 |
| August 2011 – July 2017 Kaiser Permanente Health Coverage at a rate of $454 / month (through age 65) | $32,688.00 |
| **Total: $53,546** | |

Furthermore, the annual private medical insurance coverage purchased by Mr. Delgado does not include any dental or vision care, as was previously provided through the health insurance plan at Williams Lea / Heller Ehrman. Accordingly, Mr. Delgado requests damages in the amount of one thousand (1000) dollars per year until age sixty-five (65) to pay for such expenses, from and including 2007 through 2017, when Mr. Delgado will reach the natural retirement age. The total amount of the vision and dental healthcare damages is eleven thousand (11,000) dollars.

**Actual Damages**

Finally, Mr. Delgado seeks damages on account of the humiliation, mental anguish, and emotional distress he experienced as a result of the disability discrimination, wrongful termination, and libelous acts perpetrated by Williams Lea / Heller Ehrman. Specifically, Mr. Delgado experienced severe humiliation and irreparable damage to his reputation as a result of the unfounded accusations and wrongful termination he experienced. Mr. Delgado was wrongly accused of falsifying records, and this information was communicated to all of Mr. Delgado's colleagues and superiors, including the staffs of both Williams Lea and Heller Ehrman, with whom Mr. Delgado had worked for sixteen years. Additionally, Mr. Delgado has had to report on all subsequent employment applications that he was terminated from his position, and has been unable to secure employment even marginally similar to the position from which he was terminated.

Mr. Delgado has suffered extreme anxiety, insomnia, depression, and loss of self-worth as a result of the discrimination and wrongful termination. Additionally, Mr. Delgado has

suffered and is continuing to suffer anxiety and depression regarding his ability to make mortgage payments each month, and as a result, the potential foreclosure of his home which he has owned for thirteen years. For the foregoing reasons, Mr. Delgado requests actual damages for humiliation, mental anguish and emotional distress in the amount of one hundred and ten thousand dollars ($110,000)

**Total Damages**

Lost Wages: $949,389.33

Fringe Benefits: $682,570.67

Actual Damages: $110,000.00

**TOTAL DAMAGES: $1,741,960.00**

Defendant's Statement

Williams Lea contends that plaintiff's claims are meritless and that he is not entitled to any relief.

**11. Settlement and ADR:**

The parties filed a notice of need for ADR conference on October 3, 2007.

**12. Consent to Magistrate:**

Williams Lea respectfully does not consent to assignment of this action to a Magistrate Judge.

**13. Other References:**

The parties do not believe any other reference is necessary at this time.

**14. Narrowing of Issues:**

The parties believe it is premature to narrow the issues through stipulation at this time. However, as discovery progresses, the parties will re-evaluate this issue.

**15. Scheduling:**

The parties do not believe this case should be handled on an expedited basis. The parties propose the following schedule for discovery, motions and trial:

| | |
|---|---|
| FRCP 26(a)(2) expert disclosures: | July 28, 2008 |
| FRCP 26(a)(2) rebuttal disclosures: | August 25, 2008 |
| Non-expert discovery cut-off: | August 25, 2008 |
| Expert Discovery cut-off: | September 22, 2008 |
| Dispositive pre-trial motion filing cut-off: | October 3, 2008 |
| Dispositive pre-trial motion hearing cut-off: | November 7, 2008 |
| Pretrial conference statements: | November 24, 2008 |
| Pretrial conference: | December 15, 2008 |

**16. Trial:**

The parties request a trial date of January 5, 2009.

**17. <u>Disclosure of Non-Party Interested Entities or Persons</u>:**

Williams Lea is not aware of any interested parties required to be disclosed pursuant to Northern District Local Rule 3-16.

Dated: October 12, 2007

Respectfully submitted,
SONNENSCHEIN NATH & ROSENTHAL LLP

By_________________/s/______________________
SONIA MARTIN

Attorneys for Defendants
WILLIAMS LEA, INC., CHARLOTTE DOLLY

Dated: October 12, 2007

Respectfully submitted,
LAW OFFICES OF MICHAEL HOFFMAN

By_________________/s/_ ________________
MICHAEL HOFFMAN

Attorneys for Plaintiff
JUDE DELGADO

27279819\V-2